UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MATTHEW HOPKINS, | ) |
| Plaintiff, | ) ) ) ) Case No. _____ |
| v. | ) ) ) JURY TRIAL DEMANDED |
| HILTON GRAND VACATIONS INC., MARK WANG, BRENDA J. BACON, DAVID W. JOHNSON, MARK LAZARUS, PAMELA PATSLEY, LEONARD A. POTTER, and PAUL W. WHETSELL, Defendants. | ) ) ) ) ) ) ) |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. On March 10, 2021, Hilton Grand Vacations Inc.'s ("HGV" or the "Company") Board of Directors (the "Board" or "Individual Defendants") caused HGV to enter into an agreement and plan of merger (the "Merger Agreement") with Hilton Grand Vacations Borrower LLC ("Merger Sub"), Dakota Holdings, Inc. ("Diamond"), and certain stockholders of Diamond. Diamond indirectly owns all of the interests of Diamond Resorts International, Inc. ("Diamond Resorts").

2. Pursuant to the terms of the Merger Agreement, among other things: (i) Merger Sub will merge with and into Diamond, with Merger Sub surviving (the "Merger"); (ii) following the Merger, Diamond will cease to exist and all of its assets and liabilities, including Diamond Resorts, will be held by Merger Sub; and (iii) HGV will issue shares of HGV common stock to the

stockholders of Diamond (the "Proposed Transaction").

3. On April 15, 2021, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of HGV common stock.

9. Defendant HGV is a Delaware corporation and maintains its principal executive offices at 6355 MetroWest Boulevard, Suite 180, Orlando, Florida 32835. HGV's common stock

is traded on the New York Stock Exchange, which is headquartered in New York, New York, under the ticker symbol "HGV."

10. Defendant Mark Wang is President, Chief Executive Officer, and a director of the Company.

11. Defendant Brenda J. Bacon is a director of the Company.

12. Defendant David W. Johnson is a director of the Company.

13. Defendant Mark Lazarus is a director of the Company.

14. Defendant Pamela Patsley is a director of the Company.

15. Defendant Leonard A. Potter is Chairman of the Board of the Company.

16. Defendant Paul W. Whetsell is a director of the Company.

17. The defendants identified in paragraphs 10 through 16 are collectively referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

18. HGV is recognized as a leading global timeshare company.

19. The Company develops, markets, and operates a system of brand-name, high-quality vacation ownership resorts in select vacation destinations.

20. The Company also manages and operates two innovative club membership programs: Hilton Grand Vacations Club® and The Hilton Club®, providing exclusive exchange, leisure travel, and reservation services for more than 325,000 club members.

21. On March 10, 2021, HGV's Board caused the Company to enter into the Merger Agreement.

22.  Pursuant to the terms of the Merger Agreement, among other things: (i) Merger Sub will merge with and into Diamond, with Merger Sub surviving; (ii) following the Merger, Diamond will cease to exist and all of its assets and liabilities, including Diamond Resorts, will be held by Merger Sub; and (iii) HGV will issue a number of shares of HGV common stock to the stockholders of Diamond.

23.  According to the press release announcing the Proposed Transaction:

> Hilton Grand Vacations Inc. (NYSE:HGV) ("HGV" or "the Company") today announced that it has entered into a definitive agreement to acquire Diamond Resorts International, Inc. ("Diamond") from funds (the "Apollo Funds") managed by affiliates of Apollo Global Management, Inc. (NYSE:APO) (together with its consolidated subsidiaries, "Apollo"), funds managed by affiliates of Reverence Capital Partners ("Reverence"), and other Diamond stockholders, in a stock-based transaction with an equity value of approximately $1.4 billion1. Under the terms of the agreement, the Apollo Funds and other Diamond stockholders will receive 34.5 million shares of HGV common stock, subject to customary adjustments. . . .
>
> Transaction Details
>
> Under the terms of the agreement, the Apollo Funds and the other Diamond stockholders, including the Reverence Funds, are expected to receive 34.5 million shares of HGV common stock, valued at approximately $1.4 billion, subject to customary adjustments. Upon transaction close, existing HGV shareholders will own approximately 72% of the combined company and the Apollo Funds will own approximately 28% of the combined company.
>
> The transaction, which was unanimously approved by the Board of Directors for both companies, is expected to close in the summer of 2021, subject to customary closing conditions and regulatory approvals. The issuance of HGV common stock in the transaction is subject to shareholder approval.
>
> HGV's management team, including President & Chief Executive Officer Mark Wang, Chief Financial Officer Dan Mathewes, and Chief Operating Officer Gordon Gurnik, will continue to serve in their current roles upon transaction close. HGV's Board of Directors will be expanded from 7 to 9 members, and the Apollo Funds will have the right to appoint two directors as long as their equity ownership remains at or above 15% of the outstanding stock at closing and one director as long as their equity ownership remains at or above 10% of the outstanding stock at closing.

Advisors

BofA Securities is acting as exclusive financial advisor for HGV, and Alston & Bird LLP, Simpson Thacher & Bartlett LLP, and Foley & Lardner LLP are acting as legal counsel. Credit Suisse is acting as lead financial advisor and Goldman Sachs is also acting as financial advisor for Diamond, with Paul, Weiss, Rifkind, Wharton & Garrison LLP acting as legal counsel.

*The Proxy Statement Omits Material Information*

24. Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

25. As set forth below, the Proxy Statement omits material information with respect to the Proposed Transaction.

26. First, the Proxy Statement omits material information regarding the Company's, Diamond's, and the combined company's financial projections.

27. With respect to the Company's financial projections, the Proxy Statement fails to disclose: (i) all line items used to calculate adjusted EBITDA and unlevered free cash flow; and (ii) a reconciliation of all non-GAAP to GAAP metrics.

28. With respect to Diamond's financial projections, the Proxy Statement fails to disclose: (i) all line items used to calculate adjusted EBITDA and unlevered free cash flow; and (ii) a reconciliation of all non-GAAP to GAAP metrics.

29. With respect to the combined company's financial projections, the Proxy Statement fails to disclose: (i) all line items used to calculate adjusted EBITDA and unlevered free cash flow; and (ii) a reconciliation of all non-GAAP to GAAP metrics.

30. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows

stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

31. Second, the Proxy Statement omits material information regarding the analyses performed by the Company's financial advisor in connection with the Proposed Transaction, BofA Securities, Inc. ("BofA").

32. With respect to BofA's Selected Precedent Transactions Analysis, the Proxy Statement fails to disclose: (i) the announcement and closing dates for the transactions; and (ii) the total values of the transactions.

33. With respect to BofA's Discounted Cash Flow Analysis of Diamond, the Proxy Statement fails to disclose: (i) all line items used to calculate unlevered free cash flow; (ii) the terminal values used in the analysis; (iii) BofA's basis for applying terminal forward multiples of 6.0x to 7.5x; (iv) the individual inputs and assumptions underlying the discount rates ranging from 9.50% to 11.50%; and (v) the net cost savings and revenue synergies used in the analysis.

34. With respect to BofA's Discounted Cash Flow Analysis of the Company, the Proxy Statement fails to disclose: (i) all line items used to calculate unlevered free cash flow; (ii) the terminal values used in the analysis; (iii) BofA's basis for applying terminal forward multiples of 6.5x to 8.5x; (iv) the individual inputs and assumptions underlying the discount rates ranging from 8.50% to 10.50%; and (v) the number of fully-diluted shares outstanding used in the analysis.

35. With respect to BofA's Selected Publicly Traded Companies Analysis of the Company, the Proxy Statement fails to disclose the number of fully-diluted shares outstanding used in the analysis.

36. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and

range of ultimate values generated by those analyses must also be fairly disclosed.

37. Third, the Proxy Statement omits material information regarding BofA.

38. The Proxy Statement fails to disclose the amount of BofA's compensation that is contingent upon consummation of the Proposed Transaction.

39. The Proxy Statement also fails to disclose the amount of financing-related compensation that BofA and its affiliates will receive for providing transaction-related debt financing to the Company.

40. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

41. The omission of the above-referenced material information renders the Proxy Statement false and misleading.

42. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and HGV**

43. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

44. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. HGV is liable as the issuer of these statements.

45. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

46. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

47. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

48. The Proxy Statement is an essential link in causing plaintiff to approve the Proposed Transaction.

49. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

50. Because of the false and misleading statements in the Proxy Statement, plaintiff is threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants

51. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

52. The Individual Defendants acted as controlling persons of HGV within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or Board members of HGV and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power

to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

53. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

54. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

55. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

56. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff is threatened with irreparable harm.

**PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: April 30, 2021

**RIGRODSKY LAW, P.A.**

By: */s/ Gina M. Serra*
Seth D. Rigrodsky
Timothy J. MacFall
Gina M. Serra
Vincent A. Licata
825 East Gate Boulevard, Suite 300
Garden City, NY 11530
Telephone: (516) 683-3516
Email: sdr@rl-legal.com
Email: tjm@rl-legal.com
Email: gms@rl-legal.com
Email: vl@rl-legal.com

*Attorneys for Plaintiff*